UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LAWRENCE DAWKINS,                   :
                                    :   09-cv-5756 (LAP)
              Petitioner,           :
                                    :   MEMORANDUM & ORDER
                                    :   ADOPTING REPORT &
                                    :   RECOMMENDATION
     v.                             :
                                    :
ROBERT A. KIRKPATRICK,              :
                                    :
              Respondent.           :
                                    :
------------------------------------X

LORETTA A. PRESKA, Senior United States District Judge:

   Petitioner Lawrence Dawkins ("Petitioner" or "Dawkins"), proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition, June 24, 2009, dkt. no. 2). After a jury trial in New York State Supreme Court, Dawkins was convicted of first degree murder. (State Ct. Tr. at 447-48, 450, Jan. 8, 2010, dkt. no. 8). Justice William Donnino sentenced Dawkins to life imprisonment without parole. (State Ct. Tr. at 13). After filing a direct appeal and a motion to vacate the judgment, Dawkins sought a writ of habeas corpus from this Court. (R&R at 6-10, Jan. 27, 2016, dkt. no. 21). On January 7, 2010, Respondent filed an Opposition to the petition. (Opp., Jan. 7, 2010, dkt. no. 9). On February 8, 2010, this case was referred to United States Magistrate Judge Frank Maas. (Order of Reference, Feb. 8, 2010, dkt. no. 12). On March 15,

1

2010 Petitioner filed a Reply Memorandum. (Reply, Mar. 15, 2010, dkt. no. 15).

On January 27, 2016, Judge Maas issued a Report and Recommendation ("Report") in which he recommended that this Court deny Dawkins' petition. (R&R at 34, Jan. 27, 2016, dkt. no. 21). Dawkins subsequently filed objections to the Report. (Objections, Feb. 29, 2016, dkt. no. 23). For the following reasons, the Report is adopted in full.

I. BACKGROUND

The Court assumes familiarity with the factual background and relevant procedural history as set forth thoroughly in the Report. (R&R at 2-11). Dawkins' habeas petition articulates six claims: (1) the Government failed to disclose that the police induced the cooperation of Miller, the only alleged eyewitness to the homicides, by threatening to charge her as an accessory, (R&R at 16); (2) the Government failed to disclose, and took affirmative steps to avoid disclosing, that it granted Miller leniency in an unrelated drug case in exchange for her testimony, (id.); (3) the trial court's jury instructions regarding witness credibility and prior consistent statements were improper, (id. at 20-21); (4) petitioner's counsel was ineffective due to his failure to: (a) further pursue the leniency accorded to the eyewitness, (b) object to the trial court's allegedly erroneous jury instructions, and (c) interview

key witnesses before trial, (id. at 27); (5) the prosecutor engaged in misconduct during his summation by: (a) suggesting that others saw Dawkins commit the murders, (b) implying that he personally believed Dawkins was guilty, (c) vouching for the eyewitness' credibility, and (d) asserting that the eyewitness' testimony was consistent with her prior grand jury testimony, (id. at 23); and (6) the sentence imposed was excessive. (Id. at 32).

Although the Report found the summation and jury charge claims to be in procedural default, (R&R at 15), Judge Maas reviewed all of the claims on the merits. The Report then proceeded to deny all the claims in the petition. (Id. at 34).

II. STANDARD OF REVIEW

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). When timely objections have been made to the Report, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).

However, when a petitioner objects by simply reiterating previous arguments or making only conclusory statements, the Court should review such objections for clear error. See Genao

v. United States, No. 08 CIV. 9313, 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings . . . such that no party be allowed a 'second bite at the apple' by simply relitigating a prior argument." Pinkney v. Progressive Home Health Servis., No. 06 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (citing Camardo v. Gen Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 381-82 (W.D.N.Y. 1992)). Further, because "new claims may not be raised properly at this late juncture," such claims "presented in the form of, or along with, 'objections,' should be dismissed." Pierce v. Mance, No. 08 Civ. 4736, 2009 WL 1754904, at *1 (S.D.N.Y. June 22, 2009).

III. DISCUSSION

In his Objections, Dawkins withdrew his excessive sentence claim. (Objections at 9). Dawkins maintained all his other claims, objected generally to the Report's conclusions, and merely restated claims that were raised in his earlier petition. Accordingly, Petitioner's objections only merit review for clear error. Genao, 2011 WL 924202, at *1.

1. Brady Claims

a. Police Threats

Dawkins contends that the Government violated Brady by not disclosing that Miller, an eyewitness to the murder, had been

4

threatened to be charged as an accomplice if she did not testify and objects to the Report's interpretation of Banks v. Dretke, 540 U.S. 668 (2004). (See Objections at 3-4). However, the Report accurately notes that the nondisclosures at issue in Banks were a "far cry from this case." (R&R at 18). In Banks, the Supreme Court found that the defendant had been prejudiced by the witness' testimony during the penalty phase of the trial and that even the mere disclosure of the witness as a police informant would have rendered his testimony highly suspect. See Banks, 540 U.S. at 699, 701 (noting that had the informant "not instigated, upon [the] Deputy Sheriff['s] request, the . . . excursion to fetch Banks' gun, the prosecutor would have had slim, if any, evidence that Banks planned to 'continue' committing violent acts."). The Supreme Court did not suggest that the witness' undisclosed status as an informant, or even his false testimony concerning his prior contacts with law enforcement, entitled Banks to have his conviction set aside. Rather, those disclosures related solely to Banks' alleged propensity to commit further crimes, which was an issue solely during the penalty phase of the case.

Here, the Report accurately notes that Miller was a witness, not a police informant, that she did not recant her trial testimony, that she continued to maintain that Dawkins was the shooter, and that there was ample material available to

5

Dawkins to impeach Miller during trial. Further, there is nothing in Miller's affidavit to suggest that she had any reason to make a false identification of Dawkins as the shooter, either purposefully or as the result of improper police influence. Considering this evidence, the state court reasonably determined that Dawkins had not suffered prejudice as a result of the nondisclosure of the alleged police threats. Accordingly, the Court does not find that the Report's reasoning to defer to the Appellate Division's conclusion was clear error.

### b. Alleged Offer of Leniency

Dawkins asserts a number of claims in regard to the Government's alleged offer of leniency to Miller in return for her testimony: (1) there was sufficient evidence of an offer of leniency in exchange for testimony, (2) the prosecutor purposely "shielded" himself from learning about the deal, and (3) the prosecutor did not make a sufficient effort to find out from Miller if she had been offered a deal. (Objections at 1-3, 4-5). However, as the Report noted and as the Appellate Division had previously found, there is no evidence Miller ever received an offer of favorable treatment in exchange for testimony and even Dawkins' own investigator conceded this was the case. People v. Dawkins, 841 N.Y.S.2d 552, 553 (1st Dep't 2007); (R&R at 20). Dawkins merely makes conclusory allegations he has made

before that have no evidentiary basis. Accordingly, his objections are meritless.

2. Jury Instructions

Dawkins rehashes the same allegations regarding two of the trial court's jury instructions that were made in his original petition. (Objections at 5-6). His first issue with the instructions is that rather than directing the jurors to consider whether a witness had a "motive to lie," Justice Donnino instructed them whether the witness had a "motive to tell the truth." (Id.) However, the Report correctly notes that Dawkins's argument is merely "cherry pick[ing]" language from Justice Donnino's charge. (R&R at 22). Moreover the jury charge included a falsus in uno, falsus in omnibus instruction, which explained in part that "[i]f you find that any witness has deliberately testified falsely as to any material fact you may disregard their entire testimony." (State Ct. Tr. at 399). Therefore, with respect to witness credibility, the jury instruction did not violate Dawkins' constitutional right to a fair trial.

Dawkins also contends that after giving the jurors a standard charge concerning inconsistencies in witness testimony, Justice Donnino added language advising the jurors that they could also consider whether "there were no material inconsistencies" in the testimony that they had heard. (State

Ct. Tr. at 323, 402-3). Dawkins argues that Miller had no prior statements and thus there could not be any inconsistencies for the jury to consider. (Objections at 6). Yet as the Report notes, the defense highlighted the alleged inconsistencies between Miller's two descriptions of the hat Dawkins had been wearing the night of the shootings. Thus it was wholly appropriate to instruct the jurors about witness inconsistencies. (Report at 22).

Moreover, Justice Donnino also instructed the jurors that they were the "sole judges of the facts" and that there was "no particular formula by which one person may evaluate the believability and accuracy of another person's statements or testimony." (State Ct. Tr. at 398-99). In short, an examination of the entire jury charge confirms that Justice Donnino gave a balanced instruction regarding the assessment of witness testimony. Dawkins' attempt to nitpick the language of the charge does not entitle him to habeas relief.

3. Summation Misconduct

Petitioner argues that even if his various claims of prosecutorial misconduct are not prejudicial independently, the cumulative effect was sufficiently prejudicial. (Objections at 7). However, as the Report thoroughly details, the conduct of the prosecutor was proper throughout the proceedings including during the summations. (R&R at 24-27). Because Dawkins has not

8

established that there was any misconduct in the first place, there is no misconduct to consider aggregately. Accordingly, Petitioner is entitled to no relief on this claim.

4. Ineffective Assistance of Counsel

Dawkins advances several claims relating to his trial counsel's alleged ineffectiveness. Petitioner contends that his attorney should have inquired further into the leniency that Miller allegedly was afforded in her own case in exchange for her testimony against Dawkins. (Objections at 7-8). But as the Report states, there is no evidence that Miller was offered a leniency deal in exchange for testifying. (R&R at 29).

The Report further notes that the Appellate Division found it was "reasonable for [petitioner's] counsel to conclude that there was no point in pursuing the matter." (Id.); Dawkins, 841 N.Y.S.2d at 554; see also Strickland v. Washington, 466 U.S. 668, 691 (1984) (If there is "reason to believe that pursuing certain investigations would be fruitless . . . counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Next, Dawkins maintains that his attorney should have objected to the two allegedly erroneous jury charges. (Objections at 9). But as the Report correctly states, counsel cannot be faulted for failing to object to jury instructions that were entirely proper. (R&R at 30).

9

Finally, Dawkins claims that his attorney's pretrial investigative efforts were inadequate because counsel failed to interview Miller or her companion, Clyde Cumberpatch, before trial. (Objections at 9). According to Dawkins, if his attorney had spoken with either of these individuals, counsel "might" have learned that the police had threatened to charge Miller as an accessory to the murders unless she testified against Dawkins. Because there was no admissible evidence before the state court establishing that defense counsel did not attempt to locate and interview both witnesses prior to trial, the Appellate Division summarily rejected this claim. (R&R at 30). Moreover, the Appellate Division found that there was not a "reasonable possibility" that the jury's verdict would have changed had it known of the threat to charge Miller with a serious crime. (Id. at 31) Dawkins has shown no reason that this determination by the state court was incorrect. Consequently, he cannot show a reasonable probability that the outcome of his case would have been different had these individuals been interviewed prior to trial. See Strickland, 466 U.S. at 694. Dawkins therefore cannot establish that his counsel was ineffective.

10

IV. CONCLUSION

For the foregoing reasons, the Report and Recommendation (dkt. no 21) is hereby adopted and Dawkins' habeas corpus petition (dkt. no 2) is denied. The Court declines to issue a certificate of appealability on the grounds that Dawkins has not made a substantial showing of a denial of a constitutional right. See 28 U.S.C. § 2253(c); Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).

SO ORDERED.

Dated: New York, New York
April 14, 2017

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge